IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EBRAHIM WAHAB,

               Plaintiff,

      v.

SAIMA WAHAB,

          Defendant.

Case No. 3:23-cv-00098-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       This matter comes before the Court on Defendant Saima Wahab's ("Defendant") special

motion to strike Plaintiff Ebrahim Wahab's ("Plaintiff") defamation complaint, pursuant to

Oregon's anti-SLAPP (strategic lawsuits against public participation) statute.[1] *See* OR. REV.

STAT. § 31.150. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), and

the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C.

§ 636(c). For the reasons explained below, the Court denies Defendant's anti-SLAPP motion.

---

[1] Although Oregon Revised Statutes ("ORS") §§ 31.150 to 31.155 "comprise Oregon's anti-SLAPP . . . statutes," *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009), ORS § 31.150 is "known" and often referred to as Oregon's anti-SLAPP statute because it provides the mechanism for seeking dismissal of claims that arise out of certain protected activities. *See Tokarski v. Wildfang*, 496 P.3d 22, 24 & n.1 (Or. Ct. App. 2021).

**BACKGROUND**

Plaintiff and Defendant are citizens of Oregon and the District of Columbia, respectively.[2] (Compl. at 1-4, ECF No. 2.) Defendant is Plaintiff's niece. (*Id.* at 5.) Plaintiff filed a defamation claim against Defendant and seeks, among other things, $600,000 in damages. (*Id.* at 4-5.)

Plaintiff bases his claim on allegedly defamatory statements that Defendant made about Plaintiff in a "Viber" group "text message."[3] (*Id.* at 6.) Defendant sent the message to members of their family, who subsequently disseminated Defendant's message to others, including Plaintiff. (*See id.* at 4-7, 11, identifying the message recipients as eight couples, including six people with the surname "Wahab," who are Plaintiff's "relatives," stating that the message "damaged the fabric of a happy family" and caused "distrust amongst family members," and seeking an apology to "all family members, friends, . . . includ[ing] [those] who received or were made aware subsequently"). Plaintiff alleges that Defendant's message falsely accused him of sexually abusing her "for months," over twenty years ago, when she was a child and they both lived in Afghanistan. (*See id.* at 8, 12, noting that Plaintiff has "lived here as a United States citizen for decades" and the message stated that the alleged abuse stopped when Plaintiff "left Afghanistan").

---

[2] The parties are diverse for the purpose of diversity jurisdiction. *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1130-31 (9th Cir. 2002) (observing that the plaintiff and defendant were citizens of Nevada and the District of Columbia, and were "diverse" for purposes of § 1332).

[3] Viber is an Internet-based application that allows users to send written messages. *See United States v. Cooper*, 926 F.3d 718, 733 (11th Cir. 2019) (discussing the "cell-phone application[] Viber"); *United States v. Davitashvili*, 602 F. Supp. 3d 704, 711 n.3 (E.D. Pa. 2022) ("Viber is an Internet messaging application that allows the user to send and receive audio calls, video calls, written messages, photos, and videos after downloading the software from the Internet.") (simplified). Plaintiff provides screenshots of the Viber "phone app" message. (*See* Compl. at 5-10.)

Defendant sent the message, which was titled "[W]ahab pedophile alert," on May 8, 2022, the day after she attended a family gathering at Plaintiff's nephew's house, at which Plaintiff, the message recipients, and the message recipients' children were present. (*Id.* at 5-10.) In the message, Defendant stated that Plaintiff had abused her as a child. (*Id.* at 8.) Defendant explained that she was "concerned about [the recipients'] children," believed that the recipients' children "need protection," and felt "obligat[ed] to warn" the recipients that their "children [were] not safe around [Plaintiff]," who Defendant described as a "pedophile" and "child molester" who, "[i]n any decent society, . . . would be forced to register as a pedophile[] and . . . jailed if he was seen hugging a child," as she had witnessed the previous evening. (*Id.* at 8-10.)

After receiving the message, Plaintiff's nephew forwarded it to Plaintiff. (*Id.* at 7.) Plaintiff then filed this defamation suit on January 20, 2023, and Defendant's anti-SLAPP motion followed.

## DISCUSSION

Defendant moves, pursuant to Oregon's anti-SLAPP statute, OR. REV. STAT. § 31.150, to strike Plaintiff's defamation complaint. (Def.'s Special Mot. Strike ("Def.'s Mot.") at 2, 4, ECF No. 15.) As explained below, Defendant has demonstrated that Plaintiff's complaint "arises out of" activity protected under ORS § 31.150(2)(d), but Plaintiff has also alleged a plausible and actionable defamation claim under Oregon law. The Court therefore denies Defendant's anti-SLAPP motion.

## I.    APPLICABLE LAW

### A.    Oregon's Anti-SLAPP Statute

As noted above, "SLAPP is an acronym for strategic lawsuits against public participation." *Handy v. Lane Cnty.*, 385 P.3d 1016, 1020 n.4 (Or. 2016) (citing *Neumann v.*

*Liles*, 369 P.3d 1117, 1126-27 (Or. 2016)). As the Oregon Supreme Court has explained, "[a]nti-SLAPP statutes seek to minimize the effect of strategic suits intended to deter persons from expressing their views," and "[t]heir goal is to permit defendants who are targeted for their statements to end such suits quickly and with minimal expense." *Id.* (citing *Neumann*, 369 P.3d at 1126-27).

Oregon's anti-SLAPP statute, OR. REV. STAT. § 31.150, likewise "creates an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading stage." *Plotkin v. State Accident Ins. Fund*, 385 P.3d 1167, 1170 (Or. Ct. App. 2016) (quoting *Neumann*, 369 P.3d at 1127). The statute "outlines a procedure that 'requires that the court engage in a two-step burden-shifting process.'" *Id.* (quoting *Young v. Davis*, 314 P.3d 350, 353 (Or. Ct. App. 2013)).

At the first step of the process, "the court must determine whether the defendant has met its initial burden to show that the claim against which the motion is made 'arises out of' one or more protected activities described in subsection (2) [of ORS § 31.150]." *Young*, 314 P.3d at 353. Subsection (2) of Oregon's anti-SLAPP statute describes four categories of protected activities:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;
>
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;
>
> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

PAGE 4 – OPINION AND ORDER

OR. REV. STAT. § 31.150(2).

If the defendant meets its burden of demonstrating that the plaintiff's claim "arises out of" one or more of these activities, the court moves to the second step, where "the burden shifts to the plaintiff . . . to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Young*, 314 P.3d at 353 (quoting OR. REV. STAT. § 31.150(3)). If the plaintiff meets its burden, "the court must deny the [defendant's] special motion to strike." *Mohabeer v. Farmers Ins. Exch.*, 508 P.3d 37, 40 (Or. Ct. App. 2022).

### B.    Federal Anti-SLAPP Motions

The Ninth Circuit has repeatedly affirmed the applicability of Oregon's and California's anti-SLAPP statutes—the former of which was modeled on the latter, *see DeHart v. Tofte*, 326 Or. App. 720, 725 (Or. Ct. App. 2023)—in diversity cases. *See Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) ("[W]e have repeatedly affirmed the applicability of California's anti-SLAPP statute in diversity cases[.]") (citation omitted); *see also Schwern v. Plunkett*, 845 F.3d 1241, 1242-47 (9th Cir. 2017) (applying Oregon's anti-SLAPP statute in a diversity case); *Northon v. Rule*, 409 F. App'x 146, 146-47 (9th Cir. 2011) (same); *Gardner*, 563 F.3d at 990-91 & n.9 (same).

Over the years, the Ninth Circuit has "sought to 'weed[] out specific provisions of [California's anti-SLAPP statute] that ran afoul of the *Erie* doctrine and fine-tun[e] [its] application of those provisions that remained.'"[4] *Gunn*, 65 F.4th at 1119 (quoting *CoreCivic, Inc.*

---

[4] "The *Erie* doctrine addresses 'whether state or federal law should apply on various issues arising in an action based on state law which has been brought in federal court[,]' . . . [and] commands that . . . federal courts must apply state substantive law . . . [and], generally, if a state procedural rule conflicts with a federal procedural rule, the federal procedural rule controls." *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 584 (9th Cir. 2022) (quoting

*v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022)). The Ninth Circuit's decisions "fine-tun[ing]" its application of California's anti-SLAPP statute and procedures include holdings that apply equally to a court's application of Oregon's anti-SLAPP statute's comparable provisions and procedures.[5]

Before addressing these holdings, it is important to note that like Oregon's anti-SLAPP statute, California's anti-SLAPP statute provides a two-step "burden-shifting framework," under which the defendant bears the initial burden of showing that the plaintiff's claims arise out of protected activity, and if it does so, the plaintiff must show that "each challenged claim based on protected activity is legally sufficient and factually substantiated." *See Gunn*, 65 F.4th at 1118 (simplified); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (describing the California anti-SLAPP statute's two-step "burden-shifting mechanism" and analysis in the same manner); *Mohabeer*, 508 P.3d at 40 (discussing the comparable burden-shifting framework under Oregon law).

Both California and Oregon state courts also routinely look outside the pleadings and consider extrinsic evidence in making their two-step anti-SLAPP determinations. *See Gunn*, 65

---

*Walker v. Armco Steel Corp.*, 446 U.S. 740, 744 (1980) and citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9-10 (1941)).

[5] Several judges in this district, including this Court, have recognized as much. *See Miller v. Watson*, No. 3:18-cv-00562-SB, 2019 WL 1871011, at *4-6 (D. Or. Feb. 12, 2019) (applying such a decision in assessing an Oregon anti-SLAPP motion), *findings and recommendation adopted*, 2019 WL 1867922, at *1 (D. Or. Apr. 25, 2019); *Holt v. Urban League of Portland*, No. 3:22-cv-00837-YY, 2023 WL 2989115, at *1 (D. Or. Feb. 14, 2023) (same); *Finicum v. United States*, No. 2:18-cv-00160-SU, 2020 WL 10692603, at *31-33 (D. Or. July 24, 2020), *findings and recommendation rev'd on other grounds*, 2021 WL 3502462, at *10-11 (D. Or. Aug. 5, 2021); *Chase v. Gordon, Aylworth & Tami, P.C.*, No. 3:18-cv-0568-AC, 2020 WL 1644310, at *3-4 (D. Or. Feb. 14, 2020) (same), *findings and recommendation adopted*, 2020 WL 3977608, at *1 (D. Or. July 14, 2020); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 428 F. Supp. 3d 354, 376-77 (D. Or. 2019) (same), *rev'd on other grounds*, 454 F. Supp. 3d 1040, 1044-45 (D. Or. 2020), *appeal dismissed*, No. 19-36047 (9th Cir. Apr. 13, 2023).

F.4th at 1119 (stating that California state courts "routinely look outside the pleadings" and "regularly consider extrinsic evidence" at the first step); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.) (focusing on step two and noting that California's anti-SLAPP statute provides that a "court, in making its decision, considers the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based"), *as amended*, 897 F.3d 1224 (9th Cir. 2018); *Mohabeer*, 508 P.3d at 41 ("[T]he existence of prima facie proof of the elements of the claim being challenged . . . [is] based on the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.") (simplified); *Dep't of Hum. Servs. v. Lindsey*, 525 P.3d 470, 475 (Or. Ct. App. 2023) ("[I]n answering the factual question of what actions the claim arises out of, we view the evidence in the light most favorable to plaintiff . . . based on the affidavits submitted and the complaint.").

With that background in mind, the Court turns to relevant recent Ninth Circuit opinions. In *Planned Parenthood*, the district court assumed that the plaintiffs' lawsuit arose out of protected activity in denying the defendants' special motion to strike under the California anti-SLAPP statute, and as a result, the defendants' argument that the district court erred in denying their motion focused on the second step of the analysis. 890 F.3d at 831-35. The Ninth Circuit rejected the defendants' argument that the plaintiffs had to submit evidence to satisfy their burden at step two. *Id.* at 832-34. In doing so, the Ninth Circuit explained that "to prevent the collision of California state procedural rules with federal procedural rules, [courts in this circuit should] review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Id.* at 833.

///

Specifically, the Ninth Circuit held that if an anti-SLAPP motion "challenges only the legal sufficiency of a claim," a district court should apply the Federal Rule of Civil Procedure ("Rule") 12(b)(6) standard and "consider whether a claim is properly stated." *Id.* at 834. If, however, an anti-SLAPP motion "challenges the factual sufficiency of a claim," a district court should apply the Rule 56 standard and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

The Ninth Circuit recently reaffirmed its holding in *Planned Parenthood. See CoreCivic,* 46 F.4th at 1138-43 (declining to overrule a "long line of precedents," such as *Planned Parenthood,* "holding that California's anti-SLAPP statute applies in federal court," explaining that the plaintiff primarily relied on a Supreme Court case that could be "reconciled with *Planned Parenthood,*" and turning to the merits of the disputed second part of the analysis, i.e., the legal sufficiency of the plaintiff's defamation claim under the "familiar plausibility pleading analysis"). A few months ago, the Ninth Circuit also provided clarification regarding its past California anti-SLAPP decisions, in particular *Planned Parenthood. See Gunn,* 65 F.4th at 1118-22.

In *Gunn,* the plaintiff, who "waived any challenge as to the second" step of the California anti-SLAPP analysis, argued that "the district court erred by considering evidence" at the first step. *Id.* at 1118 & n.10. The Ninth Circuit recognized that its "prior decisions [we]re not entirely clear" on this issue. *Id.* at 1118. The Ninth Circuit therefore clarified that *Planned Parenthood*'s rules for anti-SLAPP motions to strike—i.e., courts must analyze "'purely legal arguments' . . . under Rules 8 and 12, but [must treat] a factual challenge . . . as 'a motion for summary judgment,' triggering discovery," *id.* at 1120 (quoting *Planned Parenthood,* 890 F.3d

at 833)—"apply in federal court regardless of whether a plaintiff challenges the first or second step of the anti-SLAPP analysis[,] [a]nd courts are entitled to rely on extrinsic evidence whether the challenge is as to the first step, the second step, or both steps." *Id.* at 1120. As such, "where an anti-SLAPP defendant lodges a factual challenge, district courts may properly consider extrinsic evidence in evaluating whether a defendant has met her prima facie burden under step one." *Id.* at 1118.

In support of its decision, the Ninth Circuit stated that "a defendant's reliance on evidence at the first step may still implicate *Erie* issues." *Id.* at 1120. The Ninth Circuit based this statement on the overlap between the two anti-SLAPP steps in cases involving factual challenges:

> [A] district court cannot consider a defendant's evidence of factual sufficiency at the first step of an anti-SLAPP motion without essentially converting the motion into one for summary judgment because in such cases, the first step of anti-SLAPP, a prima facie showing of protected activity, significantly overlaps with challenges to the factual sufficiency of a claim. For example, as here, in evaluating whether a defendant's speech is protected under the anti-SLAPP statute, district courts may need to consider evidence relevant to the litigation privilege. This very same evidence may also be implicated at the second step when a district court determines whether the litigation privilege precludes a plaintiff from succeeding on the merits.

*Id.* (simplified). Based on the foregoing observations, the Ninth Circuit concluded that "the district court correctly evaluated [the defendant's] challenge as a factual one based on her own statements in her anti-SLAPP motion and her reliance on extrinsic evidence at both steps," and the district "court was therefore entitled to consider evidence at both prongs" of the anti-SLAPP analysis. *Id.*

The cases cited herein suggest that the holdings in *Planned Parenthood* and *Gunn* apply equally to an Oregon anti-SLAPP analysis. Accordingly, the Court relies on them in assessing Defendant's motion.

PAGE 9 – OPINION AND ORDER

## II.    ANALYSIS

### A.    *Planned Parenthood*

Defendant presented extrinsic evidence in support of her anti-SLAPP motion. Specifically, Defendant presents (1) her own declaration, which confirms that she attended the family gathering and sent the message referenced in Plaintiff's complaint and attaches a copy of a cease-and-desist letter that Plaintiff's former counsel sent to Defendant on September 26, 2022; and (2) declarations from her counsel, one of which documents her counsel's attempts to confer with Plaintiff on the pending motion, and one of which attaches copies of Plaintiff's LinkedIn profile, Plaintiff's company's articles of dissolution, and the Oregon Secretary of State's business listing for Plaintiff's company. (*See* Decl. Saima Wahab ¶¶ 1-4, ECF No. 16; *id.* Ex. 1; Decl. Melissa Hopkins Supp. Def.'s Special Mot. Strike ¶¶ 1-2, ECF No. 17; Decl. Melissa Hopkins Supp. Def.'s Reply Pl.'s Resp. Def.'s Special Mot. Strike ¶¶ 1-4, ECF No. 23; *id.* Exs. 1-3.)

Plaintiff did not submit any evidence. Plaintiff, however, does object to Defendant's counsel's attachments and related representations. (*See* Pl.'s Objs. at 3, ECF No. 25, asking the Court to dismiss Defendant's counsel's "false statements" related to his retirement and the selling of his business, dismiss "all of the submitted exhibits" from Defendant's counsel, and reprimand Defendant's counsel and require her to file an amended declaration without the three exhibits).

The Court need not (and does not) consider the extrinsic evidence Defendant submitted in support of her motion. Defendant's counsel acknowledges that her second declaration and attachments are "not relevant" to Defendant's anti-SLAPP motion. (*See* Def.'s Reply Pl.'s Resp. Def.'s Special Mot. Strike ("Def.'s Reply") at 3-4, ECF No. 22, discussing the attachments after recognizing that they are "not relevant" to the motion) (bold omitted). Further, the parties' papers

do not suggest that they dispute whether Defendant's counsel satisfied this district's conferral requirement.

Finally, and most importantly, Defendant's motion is based on purely legal questions, such as whether Defendant's statements are protected under the First Amendment or potentially false and defamatory and thus actionable. (*See* Def.'s Mot. at 12, asserting that Plaintiff cannot meet his burden at step two of the anti-SLAPP analysis because Defendant's "comments are non-actionable expressions of opinion, protected by the First Amendment and Oregon constitution"; Pl.'s Resp. Def.'s Mot. Strike ("Pl.'s Resp.") at 1-7, ECF No. 19, arguing that Defendant defamed Plaintiff and disputing whether Defendant engaged in constitutionally protected speech).

For these reasons, the Court declines to consider Defendant's evidence and applies the Rule 12(b)(6) standard in analyzing Defendant's motion. *See Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 908-16 (D. Or. 2020) (applying the Rule 12(b)(6) standard in analyzing an anti-SLAPP motion that turned on whether the challenged statements could support an actionable defamation claim); *see also Chief Aircraft, Inc. v. Grill*, 407 P.3d 909, 912 (Or. Ct. App. 2017) ("Whether [an allegedly] defamatory statement is protected by the First Amendment is a question of law."). To meet the Rule 12(b)(6) standard, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## B.     The First Step of the Anti-SLAPP Analysis

The Court finds that Defendant satisfies the first step of the anti-SLAPP analysis, which, as discussed below, appears to be undisputed. At this step, the Court assesses "whether the defendant has met [her] initial burden to show that the claim against which the motion is made

'arises out of' one or more protected activities described in subsection (2) [of ORS § 31.150]."

*Young*, 314 P.3d at 353.

Defendant asserts that Plaintiff's defamation suit arises out of, among other things, activity protected under ORS § 31.150(2)(d). (*See* Def.'s Mot. at 4.) "The plain text of th[is] provision broadly authorizes the filing of an anti-SLAPP motion 'against any claim in a civil action that arises out of [a]ny conduct in furtherance of the constitutional right of free speech in connection with a public issue or an issue of public interest.'" *Neumann v. Liles*, 434 P.3d 438, 440 (Or. Ct. App. 2018) (ellipses omitted) (quoting OR. REV. STAT. § 31.150(2)(d)). To satisfy the standard under ORS § 31.150(2)(d), a defendant must demonstrate that her "conduct (1) was 'in furtherance of the constitutional right of free speech'; and (2) was 'in connection with a public issue or an issue of public interest.'" *DeHart*, 326 Or. App. at 742 (ellipses omitted) (quoting *Neumann*, 434 P.3d at 440).

With respect to the first element, the Oregon Court of Appeals has explained that "it 'seems to suffice . . . that the defendant's activity is communicative,'" *DeHart*, 326 Or. App. at 742 (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010)), and that under Oregon "case law, a defendant need not demonstrate that their conduct was protected under the First Amendment to be conduct 'in furtherance' of the 'constitutional right to free speech.'" *Id.* (quoting *Mullen v. Meredith Corp.*, 353 P.3d 598, 603 (Or. Ct. App. 2015)). With respect to the second element, Oregon courts "have interpreted 'issue of public interest' to have its 'common-sense meaning'—namely, an issue that is of interest to the public." *Id.* (quoting *Neumann*, 434 P.3d at 441).

The Court finds that Defendant satisfies these elements and her burden under the first step of the anti-SLAPP analysis. The parties do not dispute that Plaintiff's defamation claim

against Defendant is based primarily on, and arises out of, Defendant's Viber message to

relatives whose children were recently around and/or had contact with Plaintiff at a family

gathering, and allegedly false accusation that Plaintiff sexually abused her when she was a child,

and Defendant's statement that Plaintiff should not be around or have contact with children

because he is a pedophile and child molester.

 Plaintiff disputes Defendant's accusations and argues Defendant's statements are not

protected because she knew that they were false and intended to harm him. (*See* Pl.'s Resp. at 1-

7.) Plaintiff does not address whether Defendant's conduct falls within the scope of ORS

§ 31.150(2)(d).

 Although Plaintiff disputes Defendant's accusations, Defendant is not required to

demonstrate that her conduct was protected under the First Amendment at the first step of the

anti-SLAPP analysis. And, the merits of Plaintiff's defamation claim are addressed at the second

step of the analysis. *See DeHart*, 326 Or. App. at 742 (addressing the first step and noting that "a

defendant need not demonstrate that their conduct was protected under the First Amendment,"

and "the merits of [a] plaintiff's claim against the defendant are addressed at the second step of

the anti-SLAPP inquiry" (citing *Neumann*, 434 P.3d at 441)); *Dossett*, 472 F. Supp. 3d at 908-09

(finding the first step satisfied even though the plaintiff's defamation claim was based on

disputed sexual harassment allegations in the defendants' online news articles and observing that

there is no "separate proof-of-validity requirement" at the first step (citing *Piping Rock Partners,*

*Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 969 (N.D. Cal. 2013))).

 The Court concludes that Defendant's conduct was communicative and in furtherance of

the constitutional right to free speech. *See Schwern*, 845 F.3d at 1244-45 (noting that the plaintiff

brought claims, including a claim for defamation, against his former wife based on her allegedly

"false" accusations of rape and related damage to the plaintiff's professional reputation and noting that the defendant's accusations were "hotly disputed" but there was no dispute that plaintiff's "claims ar[o]se out of expressive activity protected by the [Oregon anti-SLAPP] statute"). The cases described below, including a recent Oregon appellate decision, support this conclusion, and the conclusion that Defendant's conduct was in connection with an issue of public interest.

Several courts have reached similar conclusions in the anti-SLAPP context, and observed that sexual misconduct allegations are issues of public interest. For example, in *Lacoste v. Keem*, No. 2:20-cv-02323, 2020 WL 5239110, at *1 (C.D. Cal. June 23, 2020), the defendant published videos about the plaintiff, a purported "celebrity tattoo artist," on multiple online platforms, which "accused [him] of pedophilia," stated that he "belong[ed] in a cage," and included an "interview[] [with] a minor who allegedly had sexual conversations with [him]." *Id.* The district court noted that California cases have "generally established that the public interest requirement is met if the subject of the statement underlying the claim . . . [is] a person . . . in the public eye," and there is "a degree of closeness between the challenged statements and the asserted public interest." *Id.* at *2 (citation omitted). The district court stated "there [was] an argument" that the plaintiff placed himself in the public eye by appearing in one of the defendant's videos to address the accusations against him, but the district court did not further address the issue because it was "clear that the subject matter of adults having sexual relations with minors [was] closely connected to an issue of widespread public interest." *Id.* at *3 (citations omitted). The district court added that because there was "no dispute that the subject matter of [the defendant's] videos was [the plaintiff's] alleged sexual conduct with minors," the defendant's "statements [were] connected to issues of public interest" and protected under the anti-SLAPP statute. *Id.*

Similarly, in *Smith v. Compton*, No. 22-cv-8439, 2023 WL 4291672, at *6 (C.D. Cal. Feb. 15, 2023), the district court noted that "the public has an interest in identifying individuals who commit sexual abuse and accusations of abuse are matters of public concern," that "the public has an interest 'in specifically identifying individuals believed to have committed misconduct,'" and that statements on such matters "contribute to the discussion surrounding sexual assault because they invite discussion on identifying, responding to, and preventing sexual abuse." *Id.* (quoting *Todd v. Lovecruft*, No. 19-cv-01751, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020)). The district court also noted that "publicly accusing individuals of rape and sexual assault is unquestionably controversial, but the controversy itself serves to demonstrate that it is a matter of public interest and debate." *Id.* at *8 (quoting *Todd*, 2020 WL 60199, at *13). The district court added that the plaintiff, who the defendant accused of sexual misconduct, including rape, "may ultimately be able to hold [the defendants] liable if he prove[d] that the allegations [were] indeed defamatory, [but] that possibility [went] to the merits, not the public interest in the issues being raised in [the complaint]." *Id.* at *7-8 (bold omitted). As such, the defendants satisfied the first step. *Id.*

This Court has likewise made observations comparable to those in *Lacoste* and *Smith* in addressing an anti-SLAPP motion. *See Dossett*, 472 F. Supp. 3d at 909-10 (holding that online statements qualified for protection under Oregon's anti-SLAPP statute and noting that "accusations of abuse on their own can serve the interest of the public at large" and the sexual misconduct allegations were "disputed (and of course, they usually are)" (quoting *Todd*, 2020 WL 60199, at *13)).

The Court recognizes that Plaintiff's complaint is based primarily on Defendant's potentially private message to a group of their relatives on an Internet-based application. (*See*

Compl. at 4-7, 11, identifying the recipients as eight couples, including six people with the

surname "Wahab," all of whom are "relatives," stating that the message "damaged the fabric of a

happy family" and caused "distrust amongst family members," and seeking an apology to "all

family members, friends, . . . includ[ing] [those] who received or were made aware

subsequently"; *see also* Pl.'s Resp. at 5, "[T]here may be more people who have since obtained

and read the allegation."). Under the circumstances presented, the potentially private message (or

group size) does not preclude the finding that the anti-SLAPP motion covers Defendant's

statements.

The Oregon Court of Appeals' recent decision in *Davoodian v. Rivera*, No. A176456,

2023 WL 4752486, at *5 (Or. Ct. App. July 26, 2023), supports this conclusion. In that case, the

Oregon Court of Appeals explained that ORS § 31.150(2)(d) "protects conduct that advances or

promotes the exercise of the constitutional rights of petition or free speech in connection with a

public issue or an issue of public interest," and is "not otherwise protected by paragraphs (2)(a)

through (c)." *Id.* Although the conduct arose from matters that were "communicated privately,"

the Oregon Court of Appeals emphasized that the subject matter related to a matter of general

public interest:

> It is true that . . . the letter and unfiled complaint [at issue] here were
> communicated privately, but the subject matter of th[e] communication—civil
> claims arising from an alleged sexual assault by a person who identified himself
> on an online dating app as an anesthesiologist at [a health center]—
> was . . . 'related to a matter of general interest to the public,' and particularly
> those members of the public who are using online dating apps or need anesthesia
> at [the health center]. Contrary to the trial court's reasoning, whether [the]
> plaintiff is a public figure is not determinative of whether [the] defendant's
> conduct was in connection with an issue of public interest. . . .

*Id.* at *8. Consistent with these observations, the Oregon Court of Appeals held that the

defendant satisfied the first step of the anti-SLAPP analysis by "showing that her conduct was in

connection with an issue of public interest," noting, among other things, that the communications

stemmed from an alleged sexual assault and "related to a matter of general interest to the public,"

and the anti-SLAPP statute covers such speech to "ensure continued discourse on public issues."

*Id.* (simplified).

Similar reasoning applies here. The subject matter of Defendant's potentially private

Viber message to her relatives (and perhaps others) stems from the alleged sexual abuse of a

child and relates to a matter of general interest to the public, particularly individuals whose

children are around or have direct contact with the accused. *Davoodian* directs that ORS

§ 31.150(2)(d) covers speech and conduct like Defendant's to ensure continued discourse on

public issues. *See also DeHart*, 326 Or. App. at 741 n.16 (finding ORS § 31.150(2)(d) was

applicable even though the conduct consisted of "written statements" in a private, not public,

Facebook group because Oregon courts have "analyzed statements written online under ORS

31.150(2)(d)").[6]

The Court also notes that Plaintiff disputes only the merits of his defamation claim

against Defendant, but not whether Defendant has carried her burden at the first step of the anti-

SLAPP analysis. Given this posture, it is appropriate to focus on and turn to the second step of

the anti-SLAPP analysis. *See Davoodian*, 2023 WL 4752486, at *7 ("[T]he merits of a plaintiff's

allegation that particular conduct is wrongful are taken into account when the court

considers . . . the second step of the analysis.") (simplified); *DeHart*, 326 Or. App. at 742-43

(stating that "the merits of [a] plaintiff's claim against the defendant are addressed at the second

step of the anti-SLAPP inquiry," and the court did not need to decide if the "conduct itself was

protected by the First Amendment" to find that it was in furtherance of the constitutional right of

---

[6] The group consisted of "around 649 members" but *DeHart* did not reference the group size in addressing whether ORS § 31.150(2)(d) applied to the statements. *See* 326 Or. App. at 731, 741 n.16.

free speech); *see also Campos v. Jensen*, 439 P.3d 540, 542-48 (Or. Ct. App. 2019) (noting that the plaintiff's pre-appeal response brief "did not dispute that [the] defendant's statements were the type that permitted her to invoke the anti-SLAPP procedures" and "instead[] contested [the] defendant's assertion" as to the merits and the plaintiff's arguments on appeal also concerned the same merits issue, addressing only the merits issue on appeal given how the case was "framed by the parties' arguments both below and on appeal," and affirming the trial court's dismissal under the anti-SLAPP statute); *Young*, 314 P.3d at 355 (emphasizing that the plaintiff did "not offer any focused argument" regarding her first assignment of error under the first step of the analysis, declining to reach or address the first step, "proceed[ing] as though each of [the] plaintiff's claims w[ere] subject to [the anti-SLAPP] statute," and "decid[ing] th[e] case solely on the basis of [the] plaintiff's second assignment of error . . . under the second step of the burden-shifting process").

For these reasons and in accordance with these authorities, Defendant satisfies the standard set forth in ORS § 31.150(2)(d), and has met her burden under the first step of the anti-SLAPP analysis.

### C.    The Second Step of the Anti-SLAPP Analysis

The remaining issue is whether Plaintiff has met his burden of "establish[ing] that there is a probability that [he] will prevail on [his] claim[.]" *Young*, 314 P.3d at 353 (quoting OR. REV. STAT. § 31.150(3)). "At the second step, if, as here, the 'anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the [Rule] 12(b)(6) standard and consider whether a claim is properly stated.'" *CoreCivic*, 46 F.4th at 1140 (quoting *Planned Parenthood*, 890 F.3d at 834); *see also Dossett*, 472 F. Supp. 3d at 909 (addressing step two under the Oregon anti-SLAPP statute and assessing whether the plaintiff stated a plausible claim for defamation).

Plaintiff brings a defamation per se claim against Defendant. (*See* Compl. at 4-5, 11, asserting that Defendant has repeatedly and falsely "labeled [Plaintiff] as a pedophile, child molester, rapist, and the most horrible man one could have around children," "wrongly accus[ed] [Plaintiff] of crimes [he has] not committed," "wrongfully accus[ed] [P]laintiff of criminal acts," and falsely accused Plaintiff of an "actual[] crime recognized as the most hideous character traits worldwide"). In a defamation per se case, the plaintiff must plead and prove that the "defendant made a false statement, published to a third party, that—as pertinent here— . . . imputed to [the] plaintiff the commission of a crime involving moral turpitude." *Herrera v. C & M Victor Co.*, 337 P.3d 154, 163 (Or. Ct. App. 2014) (citing *Marleau v. Truck Ins. Exch.*, 37 P.3d 148, 155 (Or. 2001)); *NV Transp., Inc. v. V&Y Horizon, Inc.*, 462 P.3d 278, 283-84 (Or. Ct. App. 2020) (noting that in defamation per se cases, the "injurious character [of the statement] is admitted by all men," and the typical defamation "requirement for proof of special harm is dispensed") (simplified).

With respect to the second part of the Oregon anti-SLAPP analysis, the parties frame the pertinent issue as whether Defendant's statements are actionable under the framework that the Oregon Supreme Court established in *Neumann*. (*See* Def.'s Mot. at 9-10, 12, asserting that under the *Neumann* framework, Defendant's "comments are non-actionable expressions of opinion, protected by the First Amendment and Oregon Constitution"; Def.'s Resp. at 4-5, opposing Defendant's motion and stating that Defendant's statements are false, not protected, and actionable).

In *Neumann*, the Oregon Supreme Court explained that "to determine whether a defamatory statement is protected under the First Amendment, the first question is whether the statement involves a matter of public concern." 369 P.3d at 1124. As discussed above,

Defendant's challenged statements involve a matter of public concern. *Neumann* reflects that if

this is the case, the "dispositive question" is whether "the statement implies an assertion of

objective fact." *Id.*; *see also Chief Aircraft*, 407 P.3d at 912 ("Whether a defamatory statement is

protected by the First Amendment is a question of law. . . For defamatory statements that involve

a matter of public concern, the 'dispositive question is whether a reasonable factfinder could

conclude that the statement implies an assertion of objective fact.'" (quoting *Neumann*, 369 P.3d

at 1124-25)).

 *Neumann* adopted a three-part inquiry to answer this dispositive question: "(1) whether

the general tenor of the entire publication negates the impression that the defendant was asserting

an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates

that impression; and (3) whether the statement in question is susceptible of being proved true or

false." 369 P.3d at 1124-25; *see also Chief Aircraft*, 407 P.3d at 912-13 (applying the same

framework at step two of the anti-SLAPP analysis); *Campos*, 439 P.3d at 543-48 (same). In

applying this framework, courts "must consider 'the work as a whole, the specific context in

which the statements were made, and the statements themselves to determine whether . . . [they]

imply a false assertion of objective fact and therefore fall outside the protection of the First

Amendment." *Neumann*, 369 P.3d at 1125 (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153

(9th Cir. 1995)).

 With respect to the first part of the *Neumann* framework, the general tenor of Defendant's

message does not meaningfully negate the impression that she was asserting an objective fact.

(*See* Compl. at 8-10, stating that Plaintiff is "a pedophile" who "molested [Defendant] when

[she] was a child . . . for months," it was "not safe" for the message recipients to "giv[e] a

pedophile access to [their] children," and Defendant was "telling [the recipients] in clear

language [that Plaintiff] is a child molester" who "[i]n any decent society, . . . would be forced to register as a pedophile[] and . . . be jailed if he was seen hugging a child," as Defendant recently witnessed).

Notably, the Court must accept as true Plaintiff's allegations when applying the Rule 12(b)(6) standard. *See Iqbal*, 556 U.S. at 678. Oregon state courts have also declined to make credibility findings in resolving the first inquiry under the *Neumann* framework. *See Chief Aircraft*, 407 P.3d at 914 (explaining that it was "not the role of th[e] court to assess the overall *credibility* of a particular website or those who post on it," and concluding that "the general tenor of the website d[id] not negate the impression that defendant [was] asserting an objective fact"). Further, courts have held that comparable statements did not negate the impression that the defendant was asserting objective facts. *See Brooks v. Clyne*, No. 3:19-cv-02085-HZ, 2021 WL 359733, at *7 (D. Or. Jan. 31, 2021) (noting that the defendant "alleged that [the] [p]laintiff committed serious, and potentially criminal, acts" and the general tenor of the defendant's statements was "that of serious, factual allegations, which d[id] not negate the impression that [she] was asserting objective facts").

The second part of the *Neumann* framework asks whether the defendant used figurative or hyperbolic language that negates the impression that she was asserting objective facts. *Chief Aircraft*, 407 P.3d at 912-13. The Oregon Court of Appeals has characterized "figurative" language as "figures of speech or elaborate expression" and "hyperbolic" language as "extravagant exaggeration that represents something as much greater or less, better or worse, or more intense than it really is or that depicts the impossible as actual." *Id.* at 913 n.3 (citations omitted).

///

Defendant did not use figurative or hyperbolic language that negated the impression that she was asserting objective facts. On the contrary, Defendant's statements suggested that she was seriously maintaining that Plaintiff had in fact committed a specific crime, and therefore posed a threat to children. *See Neumann*, 369 P.3d at 1126 (stating that the defendant's "general reference to [the business owner] as 'crooked' [was] not a verifiable accusation that [the owner] committed a specific crime," and given "the hyperbolic tenor" overall, the "word 'crooked' d[id] not suggest that [the defendant] was seriously maintaining that [the owner] had, in fact, committed a crime"); *Brooks*, 2021 WL 359733, at *7 (noting that the defendant's allegations that the plaintiff "committed serious, and potentially criminal, acts" were made "in no uncertain terms" without "any figurative or hyperbolic language that would suggest that [the defendant] was expressing an opinion").

The third and final part of the *Neumann* framework asks whether the challenged statements are "susceptible of being proved true or false." *Chief Aircraft*, 407 P.3d at 912-13. In addressing analogous defamation claims related to a defendant's personal accusation of sexual misconduct, courts have denied a defendant's anti-SLAPP motion. *See, e.g.*, *Todd*, 2020 WL 60199, at *20-21 (holding that the plaintiff "met his prima facie burden with respect to the [defendant's] [s]tatements to the extent they accuse[d] [the plaintiff] of sexual misconduct toward [the defendant]" and denying the anti-SLAPP motion on this ground); *see also Brooks*, 2021 WL 359733, at *7 (finding that statements that the plaintiff "committed serious, and potentially criminal, acts" could be "proved true or false").

The Court rejects Defendant's argument that at the second step of the anti-SLAPP analysis, "Plaintiff has a duty to offer *admissible* evidence" and failed to "present any evidence other than his own allegations" as to falsity. (Def.'s Reply at 3-4.) The Ninth Circuit has clearly

held that where, as here, a defendant's anti-SLAPP motion presents purely legal questions and the Rule 12(b)(6) standard applies, a plaintiff is not required to present evidence in defending against the motion. *See Planned Parenthood*, 890 F.3d at 834 (explaining that "[i]n defending against an anti-SLAPP motion, if the defendants have urged only insufficiency of pleadings, then the plaintiff can properly respond merely by showing sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence").

For these reasons, the Court denies Defendant's anti-SLAPP motion. Plaintiff has stated a plausible and actionable defamation claim under the *Neumann* framework. *See Dossett*, 472 F. Supp. 3d at 909-16 (reflecting that the step two analysis on the plaintiff's likelihood of success on the merits turned on whether the plaintiff stated a defamation claim that was actionable under the *Neumann* framework); *cf. Campos*, 439 P.3d at 548 (granting an anti-SLAPP motion because the challenged statements about a friend's accusation of sexual misconduct were not actionable under the *Neumann* framework). The Court also denies Defendant's motion for attorney's fees and costs.[7] (*See* Def.'s Mot. at 2.)

///

///

///

///

///

///

---

[7] In addition to filing a response to Defendant's anti-SLAPP motion, Plaintiff filed a motion for a hearing, wherein he reiterated his allegations and arguments, "request[ed] a hearing about this case," and "plead[ed] with the justice system to hear this case[.]" (Pl.'s Mot. Hr'g at 1-6, ECF No. 20.) Given the Court's denial of Defendant's anti-SLAPP motion, the Court denies as moot Plaintiff's motion for a hearing.

## CONCLUSION

For the reasons stated, the Court DENIES Defendant's special motion to strike (ECF No. 15), and DENIES AS MOOT Plaintiff's motion for a hearing (ECF No. 20).

**IT IS SO ORDERED.**

DATED this 8th day of August, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge