IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EBRAHIM WAHAB,                                    Case No. 3:23-cv-00098-SB

             Plaintiff,                      **OPINION AND ORDER**

        v.

SAIMA WAHAB,

           Defendant.

**BECKERMAN, U.S. Magistrate Judge.**

     Pursuant to Federal Rule of Civil Procedure ("Rule") 56(a), Defendant Saima Wahab

("Defendant") moves for summary judgment on Plaintiff Ebrahim Wahab's ("Plaintiff") sole

claim for defamation. The Court has jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332(a), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28

U.S.C. § 636(c). For the reasons explained below, the Court grants Defendant's motion for

summary judgment.

## BACKGROUND

     The following facts are undisputed. Defendant is Plaintiff's niece and Plaintiff bases his

claim on allegedly defamatory statements that Defendant made about Plaintiff in a "Viber" group

"text message."[1] (Compl. at 5-6, ECF No. 2; *see also* Def.'s Answer, Affirmative Defs., &

Countercls. ¶ 4, ECF No. 33, admitting that Defendant is Plaintiff's niece and sent the "text

message . . . at issue"). The recipients of Defendant's message are all members of the parties'

family. (*See* Compl. at 4-7, 11, identifying the recipients as eight couples, including six people

with the surname "Wahab," all of whom are Plaintiff's "relatives"; Def.'s Answer, Affirmative

Defs., & Countercls. ¶ 6, admitting that Defendant sent the message to "several of her family

members").

Defendant sent the message, which was titled "[W]ahab pedophile alert," on May 8,

2022, after attending a family gathering at Plaintiff's nephew's house, at which Plaintiff, the

message recipients, and the message recipients' children were present. (Compl. at 5-10; Def.'s

Answer, Affirmative Defs., & Countercls. ¶¶ 4, 6.) In the message, Defendant stated that

Plaintiff molested her as a child, she was concerned about the recipients' children, and she

believed it was her obligation to warn the recipients that their children were not safe around

Plaintiff:

> [Plaintiff] is a pedophile. He molested me when I was a child in [K]abul for
> months. It started when my father was taken and it went on until the pedophile left
> Afghanistan. Last night seeing him hug [a young family member] broke my heart.
> I feel that I have to stop hiding this truth. It's not my shame. It's his. My fight and
> fall out with [Plaintiff's two brothers] were also a direct result of them choosing a
> child molester over me. When the pedophile came to live with us in [Portland], I
> told [Plaintiff's brothers] what he had done to me as a child. I told them I couldn't
> live having him in my life, and they both picked their brother over me. It's a
> choice they made and their choice made me realize how weak [Plaintiff's
> brothers] are. I decided to go my separate ways, and I have not regretted my

---

[1] Viber is an Internet-based application that allows users to send written messages. *See United States v. Cooper*, 926 F.3d 718, 733 (11th Cir. 2019) (discussing the "cell-phone application[] Viber"); *United States v. Davitashvili*, 602 F. Supp. 3d 704, 711 n.3 (E.D. Pa. 2022) ("Viber is an Internet messaging application that allows the user to send and receive audio calls, video calls, written messages, photos, and videos after downloading the software from the Internet.") (simplified). Plaintiff attaches screenshots of the Viber "phone app" message to his complaint. (*See* Compl. at 6, 8-10.)

decision. I do know both [of Plaintiff's brothers] are sorry now but I can't forgive them for threatening to get the pedophile a lawyer to sue me if I went public about the abuse[,] [w]hich is what [Plaintiff's eldest brother did] in my final argument with him.

I am not rehashing the past to get your sympathy or ask for understanding. I am only telling you all because now you have daughters and you have sons and I see you are giving a pedophile access to your children, not knowing what he's capable of. It's my obligation to warn you that your children are not safe around him. If you still choose to socialize with him, it's on you. I am telling you in clear language he is a child molester, and once a child molester, always a child molester. There is no need for any[] of you to message or respond to this message because I know some of you would be forced to finally pick a side which makes you uncomfortable but I am more concerned about your children. They need protection from the evil around them. But if you need to talk about this, like I said, it's not my shame. I will talk. It's the truth and if [Plaintiff's brothers] were half the men they think they are, they would've stood by me and right now [Plaintiff] would not be having dinner with your children. Only in [an] Afghan family, a child molester would be protected to protect the family name. In any decent society, he would be forced to register as a pedophile, and would be jailed if he was seen hugging a child.

(Compl. at 8; Def.'s Answer, Affirmative Defs., & Countercls. ¶¶ 4, 6.)

## LEGAL STANDARDS

"A grant of summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc) (quoting FED. R. CIV. P. 56(a)). "[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

"A material fact is one that is needed to prove (or defend against) a claim, as determined by the applicable substantive law." *Simmons v. G. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022) (citing *Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 533 (9th Cir. 1996)); *see also Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

2014) ("A fact is 'material' only if it might affect the outcome of the case[.]" (quoting *Anderson*, 477 U.S. at 248)). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) (en banc) (quoting *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020)); *see also Fresno*, 771 F.3d at 1125 ("[A] dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." (quoting *Anderson*, 477 U.S. at 248)).

In determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to, and draw all justifiable inferences in favor of, the nonmoving party. *See McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 706 (9th Cir. 2019) (per curiam) ("The court views 'evidence in the light most favorable to the nonmoving party,' to determine 'whether genuine issues of material fact exist.'" (quoting *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014))); *Brown*, 82 F.4th at 874 ("When determining whether a genuine issue of material fact exists, [a court] 'must draw all justifiable inferences in favor of the nonmoving party.'" (quoting *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021))). In doing so, a "court . . . may not judge credibility, weigh the evidence, or resolve factual disputes[.]" *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 437 (9th Cir. 2023) (citing *Anderson*, 477 U.S. at 255).

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's defamation claim. (Def.'s Mot. Summ. J. ("Def.'s Mot.") at 2, ECF No. 100.) The Court concludes that there are no genuine issues of material fact precluding summary judgment in Defendant's favor, and thus grants Defendant's motion.

///

## I.    APPLICABLE LAW[2]

The Oregon Supreme Court has "recognized a common-law action for defamation for injury to reputation for over 150 years." *Neumann v. Liles*, 369 P.3d 1117, 1121 (Or. 2016) (citation omitted). Under Oregon law, defamation comprises both libel (injurious written or printed words) and slander (injurious spoken words). *See id.* (discussing actionable forms of defamation and explaining that "[l]ibel[] . . is[] defamation by written or printed words" and "[s]lander . . . is defamation by spoken words" (citing *Hinkle v. Alexander*, 417 P.2d 586, 589 (Or. 1966))).

### A.    Elements of Defamation

#### 1.    Defamatory Statements and Publication

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann*, 369 P.3d at 1121 (citing *Wallulis v. Dymowski*, 918 P.2d 755, 757-58 (Or. 1996)). The Oregon Supreme Court has explained that "[a] defamatory statement is one that would subject the plaintiff 'to hatred, contempt or ridicule[,] tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held[,] or . . . excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff].'" *Id.* (ellipses omitted) (quoting *Farnsworth v. Hyde*,

---

[2] The Court has diversity jurisdiction over this defamation action. *See Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2023 WL 5035662, at *1 & n.2 (D. Or. Aug. 8, 2023) (recognizing that the parties are diverse because Plaintiff and Defendant are citizens of Oregon and the District of Columbia, respectively, and Plaintiff seeks damages satisfying the amount-in-controversy requirement (citing 28 U.S.C. § 1332(a) and *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1130-31 (9th Cir. 2002))). As a result, the Court must apply Oregon substantive law. *See Or. Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1068 (9th Cir. 2023) (exercising diversity jurisdiction and therefore applying Oregon law (citing *Alexander Mfg., Inc. Emp. Stock Ownership Plan & Tr. v. Ill. Union Ins. Co.*, 560 F.3d 984, 986 (9th Cir. 2009))); *Baldin v. Wells Fargo Bank, N.A.*, 704 F. App'x 715, 716 n.1 (9th Cir. 2017) (noting that "the substantive law of the State of Oregon applie[d] to th[e] diversity claim" (citing *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007))).

512 P.2d 1003, 1004 (Or. 1973)); *Lowell v. Wright*, 512 P.3d 403, 411 (Or. 2022) (describing a defamatory statement in the same manner and stating that such a statement "can be the basis for a defamation claim").

"To be actionable, a [statement] must be both false and defamatory." *Reesman v. Highfill*, 965 P.2d 1030, 1034-35 (Or. 1998) (citing *Harley-Davidson v. Markley*, 568 P.2d 1359, 1361-62 (Or. 1977)); *see also Kolwitz v. Lincoln Cnty. ex. rel. Lincoln Cnty. Sheriff's Off.*, 520 F. App'x 570, 570-71 (9th Cir. 2013) (holding that the self-represented plaintiffs "failed to raise a triable dispute as to [the] required elements" of their defamation claim, and noting that "for a statement to be actionable under Oregon law, the statement at issue must be both defamatory and false" (citing *Reesman*, 965 P.2d at 1034)). "In general, a statement is published when it is communicated to a third party." *Wallulis*, 918 P.2d at 758 (citing *State ex rel. Advanced Dictating v. Dale*, 524 P.2d 1404, 1406 (1974)). Thus, "if a person makes a defamatory statement about another person, but that statement is not conveyed to a third party, no publication has occurred." *Id.*

### 2. Pecuniary Loss or Special Harm

"In defamation [cases], a plaintiff ordinarily must show that a defamatory publication resulted in 'special harm.'" *NV Transp., Inc. v. V&Y Horizon, Inc.*, 462 P.3d 278, 283-84 (Or. Ct. App. 2020); *see also Herrera v. C & M Victor Co.*, 337 P.3d 154, 161-62 (Or. Ct. App. 2014) ("Special harm is the loss of something having an economic or pecuniary value[.]" (quoting *Nat'l Union Fire Ins. Co. v. Starplex Corp.*, 188 P.3d 332, 348 (Or. Ct. App. 2008))). In some cases, however, "defamatory statements are actionable *per se*," *Neumann*, 369 P.3d at 1121, "on the theory that their injurious character is admitted by all . . . ; and that on that account they are conclusively presumed to result in damage." *NV Transp.*, 462 P.3d at 283 (quoting *L & D of Or., Inc. v. Am. States Ins. Co.*, 14 P.3d 617, 621-22 (Or. Ct. App. 2000)). When that is the case, the

plaintiff need not present proof of pecuniary loss or special harm. *See Lowell*, 512 P.3d at 411 ("Because the claim is libel *per se*, plaintiff [was] not obliged to prove a third element: that the defamatory statement caused pecuniary loss or special harm." (citing *Brown v. Gatti*, 145 P.3d 130, 133 (Or. 2006))); *NV Transp.*, 462 P.3d at 283-84 ("[T]he requirement for proof of special harm is dispensed with if the defamatory statement is deemed to be defamatory *per se*.") (citation omitted).

### B.    Forms of Privilege

Oregon courts have recognized that "[a] statement that is otherwise defamatory is privileged if it is uttered under such circumstances that the law grants immunity to the speaker." *Mannex Corp. v. Bruns*, 279 P.3d 278, 285 (Or. Ct. App. 2012) (citing *Wattenburg v. United Med. Laboratories, Inc.*, 525 P.2d 113, 114 (Or. 1974)). "There are two forms of privilege that may apply in a defamation action; a defamatory statement may be either 'absolutely privileged' or 'qualifiedly [or conditionally] privileged.'" *Wallulis*, 918 P.2d at 760; *see also id.* n.5 ("In some cases, the term 'conditional privilege' is used, while in others the term 'qualified privilege' is used. In this context those terms have the same meaning. In this opinion, we use 'qualified privilege.'").[3]

An "absolute privilege . . . bars [a] defamation claim altogether." *DeLong v. Yu Enters., Inc.*, 47 P.3d 8, 10 (Or. 2002) (citing *Moore v. West Lawn Mem'l Park*, 512 P.2d 1344, 1346 (Or. 1973)). "By contrast, a qualified privilege does not bar the action, but [it does] require[] the plaintiff to prove that the defendant abused the privileged occasion, in order to recover from the defendant." *Wallulis*, 918 P.2d at 760-61 (simplified) (quoting *Bank of Or. v. Indep. News*, 693 P.2d 35 (1985)). "Generally, a qualified privilege exists to protect three kinds of statements:

---

[3] In this opinion, the Court uses the term "conditional privilege," unless quoting another source.

(1) those made to protect the defendant's interests; (2) those made to protect the plaintiff's employer's interests; or (3) those made on a subject of mutual concern to the defendant and the persons to whom the statement was made." *DeLong*, 47 P.3d at 10 (citing *Wallulis*, 918 P.2d at 762).

## II.    ANALYSIS

Defendant argues that she is entitled to summary judgment on Plaintiff's defamation claim on multiple grounds. (Def.'s Mot. at 6; Def.'s Reply Pl.'s Resp. Def.'s Mot. Summ. J. ("Def.'s Reply") at 1-4, ECF No. 110.) First, Defendant argues that "Plaintiff cannot prove that Defendant's statements are false, which is an essential element of [Plaintiff's] defamation claim under Oregon law." (Def.'s Mot. at 6.) Second, Defendant argues that her "statements were conditionally privileged, and Plaintiff cannot prove that the privilege was abused." (*Id.*) Third, Defendant argues that her "statements [constituted] non-actionable, protected opinion speech." (*Id.*)

The Court agrees that Defendant's statements were conditionally privileged, and that Plaintiff fails to raise a genuine dispute of material fact as to whether Defendant abused her privilege. As a result, the Court grants Defendant's motion for summary judgment on Plaintiff's defamation claim.[4]

### A.    Plaintiff's Prima Facie Claim

There is no dispute that Defendant sent the message at issue, which included Defendant's statements that "Plaintiff is a pedophile, and that Plaintiff molested Defendant when she was a

---

[4] The Court overrules as moot Defendant's evidentiary objections (*see* Def.'s Reply at 4-6), because the inclusion or exclusion of the challenged evidence would not change the Court's opinion on Defendant's motion. *See Bibiyan v. Marjan Television Network, Ltd.*, No. 18-cv-0877, 2019 WL 422664, at *1 (C.D. Cal. Feb. 4, 2019) ("Any evidentiary objection that is not explicitly addressed herein is overruled as moot, given that the inclusion or exclusion of such evidence would not change the Court's ruling on Defendant's motion.") (simplified).

child." (Def.'s Answer, Affirmative Defs., & Countercls. ¶ 4.) As the Court has previously observed, Plaintiff's defamation claim is appropriately characterized as a defamation per se claim, *see Wahab*, 2023 WL 5035662, at *10, as Defendant's statements imputed to Plaintiff the commission of a crime involving moral turpitude. *See Herrera*, 337 P.3d at 163 ("[T]o prove a claim for defamation *per se*, plaintiff had the burden of proving that defendant made a false statement, published to a third party, that—as pertinent here—either (1) tended to injure plaintiff in his profession or business; or (2) imputed to plaintiff the commission of a crime involving moral turpitude." (citing *Marleau v. Truck Ins. Exch.*, 37 P.3d 148, 155 (Or. 2001)).

Given Plaintiff's assertion of a defamation per se claim, Plaintiff can establish his prima facie case by demonstrating that Defendant published to a third party a defamatory statement about Plaintiff (i.e., Plaintiff does not need to present proof of pecuniary loss or special harm). *See Lowell*, 512 P.3d at 411 ("[T]o establish a *prima facie* claim of libel *per se*, subject to defenses, plaintiff must prove that defendants made a defamatory statement about him and published the statement to a third party. . . . Because the claim is libel *per se*, plaintiff is not obliged to prove a third element: that the defamatory statement caused pecuniary loss or special harm." (citing *Neumann*, 369 P.3d at 1121 and *Brown*, 145 P.3d at 133)). Even if Plaintiff has established a prima face case, Plaintiff's defamation per se claim remains "subject to defenses." *See id.*; *see also Schafroth v. Baker*, 553 P.2d 1046, 1046-48 (Or. 1976) (rejecting the plaintiff's argument in a slander case that the "doctrine of qualified privilege [was] not available as a defense to an accusation of criminal conduct," noting that the "authorities are to the contrary," and holding that "qualified privilege may be a defense to an accusation of criminal conduct").

## B.    Defendant's Conditional Privilege

The undisputed facts demonstrate that Defendant's statements were conditionally privileged. The record also demonstrates that Plaintiff fails to raise a genuine issue of material

fact as to whether Defendant abused the privilege. As a result, the Court concludes that
Defendant is entitled to summary judgment on Plaintiff's defamation per se claim.

A conditional privilege generally protects "three kinds of statements," including "those
made on a subject of mutual concern to the defendant and the persons to whom the statement
was made." *DeLong*, 47 P.3d at 10 (citing *Wallulis*, 918 P.2d at 762). Consistent with this
understanding, Defendant argues that her statements about Plaintiff are conditionally privileged
because they "addressed a subject of mutual concern to the Defendant and the persons to whom
the [statements] were made," namely, the mutual concern of "protecting children from sexual
abuse." (Def.'s Mot. at 8-9; *see also* Def.'s Answer, Affirmative Defs., & Countercls. ¶ 12.)

In addressing conditional privilege, the Oregon Supreme Court has looked to and
expressly adopted portions of the Restatement of Torts and Restatement (Second) of Torts. *See*
*Wallulis*, 918 P.2d at 762 n.6 ("In *Wattenburg*, the [Oregon Supreme] [C]ourt adopted the
concept of 'conditional privilege' as embraced in the Restatement of Torts. After *Wattenburg*
was decided, the pertinent sections of the Restatement (Second) of Torts concerning defamation
were published. Except for a few changes in wording and grammar, Restatement (Second) of
Torts, §§ 594-96 (1977), are identical to Restatement of Torts, §§ 594-96 (1938).") (simplified).
The Oregon Court of Appeals has also cited favorably to the Restatement (Second) of Torts,
including Section 597. *See Worley v. Or. Physicians Serv.*, 686 P.2d 404, 407 (Or. Ct. App.
1984) (finding "as a matter of law" that statements were conditionally privileged (citing, *inter
alia*, RESTATEMENT (SECOND) TORTS §§ 593-598A (1977))); *see also Wroten v. Lenske*, 835
P.2d 931, 932-34 & n.1 (Or. Ct. App. 1992) (addressing a case for wrongful initiation of civil
proceedings for libel, noting that the plaintiff argued at trial that conditional "privilege[]"
protected her allegedly libelous letter to her brother, which concerned their family member, and

stating that the defendant "[did] not rely on that publication to support his assertion that he had probable cause to continue the [libel] action after he was told [an identical] letter had not been sent to either the Attorney General or the Oregon State Bar" (citing RESTATEMENT (SECOND) TORTS § 597 (1977))).

Section 597 addresses the conditional privilege for "Family Relationships." *See* RESTATEMENT (SECOND) TORTS § 597 (June 2024 update) (discussing "Family Relationships" under the topic of "Conditional Privileges" and subtitle on "Factors Determining the Existence of a Conditional Privilege Arising from an Occasion"); *see also O'Connor v. Burningham*, 165 P.3d 1214, 1223-24 (Utah 2007) (addressing the "conditional privilege for family relationships," the "conditional protection for communications that contain information relating to intra-family relationships," and the "intra-family relationship privilege" under Section 597) (simplified); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1199-1200 (10th Cir. 2007) (providing "[a] brief discussion of qualified (or conditional) privilege in the defamation context," and citing the conditional privilege related to "family members" under Section 597). Section 597 provides, in relevant part, that:

> (1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
>
> > (a) there is information that affects the well-being of a member of the immediate family of the publisher, and
> >
> > (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the well-being of the member of the family.
>
> (2) An occasion makes a publication conditionally privileged when the circumstances induce a correct or reasonable belief that
>
> > (a) there is information that affects the well-being of a member of the immediate family of the recipient or of a third person, and

(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the well-being of the member of the family, and

(c) the recipient has requested the publication of the defamatory matter or is a person to whom its publication is otherwise within generally accepted standards of decent conduct.

RESTATEMENT (SECOND) TORTS § 597 (June 2024 update).

In comments accompanying subsection (1), the Restatement states that "[e]veryone has a sufficient interest in the physical, moral and social well-being of the members of his immediate family to make it proper for him to . . . publi[sh] . . . defamatory matter concerning another when, if the matter were true, the recipient's knowledge would be of service in protecting their well-being." *Id.* § 597 cmt. c. The Restatement also explains that "[t]he statement in this Subsection [(1)] gives a conditional privilege to communications between members of a family, . . . and to communications between one member of a family and a third person." *Id.* § 597 cmt. d. The Restatement adds that "[i]n either case, the person to whom the defamatory publication is made must be one whose knowledge of it is reasonably believed to be of value for the protection of the publisher's interest in the well-being of other members of his immediate family." *Id.*

Further, the Restatement comments on subsection (2) acknowledge that depending on the particular social relationship, the publisher may have a privilege voluntarily to communicate the information:

The statement in this Subsection gives a conditional privilege to publish defamatory matter concerning another for the purpose of protecting the well-being of some member of the immediate family of the recipient or other third person. . . . [T]he particular social relationship between the publisher and the recipient may be such as to give him a privilege to communicate information even without a request for it which otherwise he would not be privileged to volunteer.

*Id*. § 597 cmt. e.

Although the Oregon Supreme Court has "adopted the concept of 'conditional privilege' as embraced in the Restatement," *see Wallulis*, 918 P.2d at 762 n.6 (stating as much and noting that the more recent publication at issue was nearly "identical") (simplified), it does not appear that the Oregon Supreme Court has considered whether to adopt Section 597 or formally recognize a conditional privilege for communications relating to family relationships. Other courts have done so. *See, e.g.*, *O'Connor*, 165 P.3d at 1224 (reflecting that the Utah Supreme Court "f[ou]nd little justification to deny relationships in the familial setting the same legitimacy [it had] granted in [a previous decision] to those in the business world, [and as a result,] t[ook] th[e] occasion to incorporate Restatement (Second) of Torts, section 597 into Utah's defamation jurisprudence").

In a diversity case like this one, the Oregon Supreme Court's published decisions bind the Court as to Oregon substantive law. *See U.S. Bank, N.A. v. White Horse Ests. Homeowners Ass'n*, 987 F.3d 858, 863 (9th Cir. 2021) ("In a diversity case, the published decisions of the Nevada Supreme Court bind federal courts as to the substance of Nevada law." (citing *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011)). If the Oregon Supreme Court has not squarely addressed an issue, the Court's role is to predict how the Oregon Supreme Court would decide the issue. *See id.* ("[T]he Nevada Supreme Court has not addressed squarely, in any published decision, the [primary question in this case]. Our role is thus to 'predict how the state high court would resolve' the question in a published decision." (quoting *Albano*, 634 F.3d at 530)).

Considering the Oregon Supreme Court's adoption of the concept of "conditional privilege" as embraced in the Restatement and Oregon courts' favorable citation to the relevant portions of the Restatement, the Court predicts that like the Utah Supreme Court, the Oregon

Supreme Court would incorporate Section 597 into Oregon's defamation jurisprudence. Section 597's conditional privilege for family relationships is compatible with the "three kinds of statements" that a conditional privilege generally exists to protect. *See DeLong*, 47 P.3d at 10 ("Generally, a qualified privilege exists to protect three kinds of statements: (1) those made to protect the defendant's interests; (2) those made to protect the plaintiff's employer's interests; or (3) those made on a subject of mutual concern to the defendant and the persons to whom the statement was made.") (citations omitted). It would make little sense to deny relationships in the familial setting the same conditional protections that courts have granted to those in the employment or business contexts. *Cf. O'Connor*, 165 P.3d at 1224 (finding "little justification" to treat relationships in the familial setting different that those in a comparable "business world").

The Court turns to the issue of whether Defendant's statements were, as a matter of law, conditionally privileged. *See Worley*, 686 P.2d at 407 ("As a matter of law, [the employer's vice president's] statements were conditionally privileged, because a reasonable person could only find from the evidence that they were made to protect the interests of [the employer] in security and employee morale and were on a subject of mutual concern to it and to the claims department employees to whom it was made."). The Court concludes that Defendant's statements were conditionally privileged under Section 597, or alternatively, because Defendant's statements to family members with young children were on a matter of mutual concern—namely, the well-being of young family members. *See Mannex*, 279 P.3d at 285 (holding that the defendant's statements were "qualifiedly privileged" and providing "alternative[]" reasons as to why that was the case).

///

Section 597's "general rule accords to a family member-publisher a [conditional] privilege to communicate defamatory matter to another family member as long as the publisher has 'a correct or reasonable belief' that he or she has information concerning 'the well being of a member of the immediate family' of the publisher."[5] *David Elder, Defamation: A Lawyer's Guide* § 2:27 (October 2023 update) (footnotes omitted) (citing RESTATEMENT (SECOND) TORTS § 597 (June 2024 update)). Cases have extended this conditional privilege to a variety of communications, including ones based on unconfirmed allegations and imputations of criminal conduct:

> [T]he cases extended a conditional privilege to communications by a sister-in-law to a married sister of plaintiff's fiancee regarding plaintiff's marital fitness, *to inform intimate friends and family of her status as a likely sexual assault victim*, to statements by a father to his daughter as to plaintiff-fiancee's *alleged* infection with a venereal disease, to comments by letter from a son to a mother in order to protect her legal rights, to charges by a father to his son regarding vandalism to the family home and threats to the father, to *imputations* of theft between brothers as to a third brother, and to a communication by a son-in-law to a mother-in-law portraying plaintiff-fiancee as an "unprincipled trickster." The "near relationship" involved in such cases "authorizes, if it did not require," a good faith disclosure of the information.

*Id.* (emphasis added) (footnotes omitted) (citing, *inter alia*, *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748 (D. Md. 2015));[6] *see also Rossi v. Univ. of Utah*, No. 2:15-cv-00767, 2020 WL 2134217,

---

[5] Both the Oregon Supreme Court and Ninth Circuit have cited this author on defamation law. *See Wallulis*, 918 P.2d at 760 (finding "persua[sive] . . . the cited criticisms of the intracorporate nonpublication rule" (citing David A. Elder, *Defamation: A Lawyer's Guide* § 1:6 (1993))); *Neumann*, 369 P.3d at 1123 ("The analytical response of both lower federal courts and state courts to [a Supreme Court decision] has been varied." (citing David A. Elder, Defamation: A Lawyer's Guide § 8:15 (2003))); *see also Miller v. Sawant*, 18 F.4th 328, 342 (9th Cir. 2021) (describing the legal standard and citing David A. Elder, Defamation: A Lawyer's Guide § 1:30 (2020)).

[6] In *Salisbury*, the plaintiffs' defamation claims were based on statements the defendant made after attending a college house party. 123 F. Supp. 3d at 754-55. The defendant "alleg[ed] that she had been the victim of sexual assault, and . . . that [the] [p]laintiffs committed the assault." *Id.* at 758. In addressing conditional privilege, the district court noted that the defendant "allegedly told her close friends and family that she had been, or may have been, the victim of a

at *49 (D. Utah May 5, 2020) (discussing Section 597 and determining that the conditional

privilege for family relationships did not apply but noting that "[a]n example of [a conditionally

privileged statement] is when a family member sees a child with certain friends and

communicates defamatory statements about the friends to the child's parent for purposes of

protecting the child"), *rev'd on other grounds*, No. 20-4062, 2022 WL 1421957, at *1 (10th Cir.

May 5, 2022).

Section 597's "general rule applies likewise where the family member-publisher

communicates defamatory information to a non-family recipient whose 'knowledge of the

defamatory matter will be of service in the lawful protection of the well-being of the member of

the family.'" David Elder, *Defamation: A Lawyer's Guide* § 2:27 (October 2023 update)

(quoting RESTATEMENT (SECOND) TORTS § 597 (June 2024 update)). In a New York case, for

example, "a great aunt was held privileged to communicate to the probation officer (at the non-

custodial mother's request) information pertinent to the best interest of the child in the father's

temporary custody." *Id.* (citing *Garson v. Hendlin*, 532 N.Y.S.2d 776, 780-81 (N.Y. App. Div.

1988)). One Oregon federal district court, however, has "held that no privilege existed as to

republication of allegations of rape by a co-employee made to family members and friends—a

questionable conclusion at least as to communications to family members." *Id.* (citing *Goodman-*

---

sexual assault," and the defendant's "alleged statements were probably made in furtherance of
her legitimate interest in personal safety and the safety of those closest to her." *Id.* The district
court added that the defendant had "not been accused of publishing these allegations to a broad
public forum"; rather, she was "accused [only] of confiding in those people who [were] rightly
understood to be part of [her] support system—close friends and family." *Id.* at 759. The district
court explained that it was "mindful of the objectionable policy implications that could follow in
a world where such statements are unprivileged." *Id.* at 759. Specifically, "[v]ictims would have
to weigh . . . the value of reaching out for help in the aftermath of a traumatic sexual assault,
and . . . the risk that they could be subject to civil liability for defamation if the occurrence of
sexual assault is contested by the alleged perpetrator." *Id.* The district court concluded by stating
that "[f]ortunately, Maryland courts do recognize a conditional privilege for such statements." *Id.*

*Herron v. Advanced Navigation & Positioning Corp.*, 940 F. Supp. 281, 283-84, 286 (D. Or. 1996)).[7]

The Court concludes that as a matter of law, Defendant's statements were conditionally privileged. It is undisputed that Defendant published the allegedly defamatory statements to a limited and specific group of family members who had recently attended a family gathering. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") Ex. 22 at 2, ECF No. 108-2, recounting that Plaintiff, Plaintiff's family, and Defendant attended the gathering at Plaintiff's nephew's house and the attendees were "[m]ostly Wahab family members and their respective spouses" and "lots of children of various ages [with their] parents"; Def.'s Answer, Affirmative Defs., & Countercls. ¶ 6, admitting that Defendant sent the message to "several of her family members"; Compl. at 7 and Pl.'s Resp. Ex. 22 at 1-2, describing various family members and their relationship to one another and that Defendant sent the message to eight couples, including Defendant's brother and sister and their spouses and five other couples with the surname "Wahab"; Compl at 11, reflecting that in his complaint, Plaintiff states that he is "no stranger to the [message] recipients or the children of the recipients" because they are "all [Plaintiff's]

---

[7] Given the authorities discussed herein, the Court agrees that *Goodman-Herron* reached a "questionable conclusion at least as to communications to family members," and therefore does not rely on or further address that decision here. *See Goodman-Herron*, 940 F. Supp. at 283-84, 286 (noting that the defendant asserted a defamation counterclaim against the plaintiff because after they returned from a business trip, the plaintiff "told her family, friends[,] . . . colleagues[, and others] that she had been raped by [the defendant]," the plaintiff asserted that "her statements to [the employer] and her family and friends were conditionally privileged because they were made to persons having a corresponding interest in the subject matter," and the district court denied summary judgment "on this basis" because "[t]he court [was] unaware of any Oregon case which holds privileged statements made to family members and friends concerning personal difficulties").

relatives" and "know [Plaintiff] as an integral member of the extended family"; Pl.'s Resp. at 8,

referring to Defendant's "text message to the family in 2022").[8]

It is also undisputed that (1) in 1997, Defendant, Plaintiff, and Plaintiff's brothers

participated in a family meeting, during which Defendant accused Plaintiff of sexually abusing

her as a child, (2) between 1997 and May 2022, Plaintiff "did not have any contact" with

Defendant, (3) Defendant's May 2022 message began by repeating her accusation that Plaintiff

"molested [her] when [she] was a child" and noting that "seeing [Plaintiff] hug" a young family

member at the gathering the previous evening "broke [her] heart," and (4) in her message,

Defendant maintained that she was not "rehashing the past to get [the recipients'] sympathy or

ask[ing] for [the recipients'] understanding"; rather, Defendant was "only telling [the recipients]

because now [they] ha[d] daughters and . . . sons," the recipients were giving Plaintiff "access to

[their] children," and Defendant believed that it was her "obligation to warn [the recipients] that

[their] children [were] not safe around [Plaintiff]." (Pl.'s Resp. Ex. 22 at 1-2; *id.* Ex. 19 at 2, ECF

No. 108-6.)

These facts provide necessary context for evaluating conditional privilege. Section 597's

"general rule" grants Defendant a conditional "privilege to communicate *defamatory matter* to

another family member as long as the [she] ha[d] 'a correct or reasonable belief' that . . . she

ha[d] information concerning 'the well being of a member of the immediate family' of the

publisher." *David Elder*, Defamation: A Lawyer's Guide § 2:27 (October 2023 update)

(emphasis added) (footnotes omitted). Nothing in the record casts doubt on whether Defendant

---

[8] The record evidence suggests that Defendant may not have sent the message to one recipient's spouse. (*See* Dep. Jamila Wahab 28:17-25, Apr. 16, 2024, ECF No. 108-10 at 5, noting that the recipient testified that she did not believe that her husband had the phone application at issue).

had a reasonable belief that she had information concerning the well-being of her young family members.

Notably, the comments accompanying Section 597 provide that "[e]veryone has a sufficient interest in the . . . well-being of the members of [their] immediate family to make it proper for [them] to . . . publi[sh] . . . defamatory matter concerning another when, if the matter were true, the recipient's knowledge would be of service in protecting their well-being." RESTATEMENT (SECOND) TORTS § 597 cmt. c (June 2024 update). Furthermore, the comments accompanying Section 597 provide that "the person to whom the defamatory publication is made must be one whose knowledge of it is reasonably believed to be of value for the protection of the publisher's interest in the well-being of other members of his immediate family." *Id.* § 597 cmt. d.

Here, Defendant's allegedly defamatory statements—on their face—concerned her interest in the well-being of her young family members and the recipients' interest in the well-being of their children. If Defendant's statements were true, the recipient parents would be of service in protecting these young children.

In his response, Plaintiff emphasizes that "[n]o one asked for [Defendant's] statement," Defendant's message was "100% unsolicited," and none of the recipients "asked [Defendant] for the information she provided in [her] message[.]" (Pl.'s Resp. at 5, 10.) Unlike subsection (2), subsection (1) of Section 597 does not ask whether "the recipient has requested the publication of the defamatory matter or [was] a person to whom its publication [was] otherwise within generally accepted standards of decent conduct." *See* RESTATEMENT (SECOND) TORTS § 597 (June 2024 update). Even if subsection (2) applied, however, "the particular social relationship between the publisher and the recipient may be such as to give [the publisher] a privilege to

communicate information even without a request for it which otherwise [s]he would not be privileged to volunteer." *Id.* § 597 cmt. e. Considering Defendant's familial relationship, allegations, and stated desire to protect young children, Defendant's allegedly defamatory statements were within "generally accepted standards of decent conduct," and therefore were conditionally privileged.[9] *See* David Elder, *Defamation: A Lawyer's Guide* § 2:27 (October 2023 update) (addressing the "generally accepted standards of decent conduct" criterion and stating that cases have "require[d] something in the way of a request or a social or moral duty of disclosure").

For all of these reasons, the Court finds that Defendant's statements were conditionally privileged, as the record supports that "the allegedly defamatory statement[s] [were] made upon an occasion furnishing a prima facie justification for [their] publication." *See Garson*, 532 N.Y.S.2d at 780 (stating that "it has been observed that the individual asserting the defense of qualified privilege must establish that the allegedly defamatory statement was made upon an occasion furnishing a prima facie justification for its publication," holding that "a qualified privilege ar[ose] by virtue of the defendant's significant familial interest in furthering the welfare of [a family member's] children," and noting that "it has been generally agreed that a qualified privilege attaches to communications relative to family matters, made in good faith to the proper parties, by members of a family, intimate friends, and third persons under a duty to speak") (simplified).

///

_____

[9] During oral argument, Plaintiff speculated that Defendant's message may have reached others, but he presents no evidence that Defendant published the message to anyone other than family members, as discussed herein. Plaintiff also argued that he only considers individuals with the same surname to be family members, not spouses. Plaintiff's opinion is not controlling here, nor would it render inapplicable Defendant's privilege, in part because the Wahab spouses are parents of young children even if Plaintiff does not consider them to be "family."

The remaining question, then, is whether Plaintiff has raised a genuine issue of material fact as to whether Defendant abused her privilege. *See Mannex*, 279 P.3d at 285 (explaining that because the defendant's statements "were qualifiedly privileged," the "question then bec[a]me[] whether [the] plaintiff raised a fact question as to whether [the] defendant abused her privilege"); *see also Walsh v. Consol. Freightways, Inc.*, 563 P.2d 1205, 1211 (Or. 1977) (stating that "[t]he burden of proving an abuse of the qualified privilege . . . rests upon the plaintiff"); *Elizabeth Retail Props., LLC v. KeyBank Nat'l Ass'n*, No. 3:13-cv-02045-SB, 2017 WL 1407662, at *14 (D. Or. Mar. 10, 2017) (noting that the plaintiffs bore the "[t]he burden of proving [the defendant] abused the qualified privilege") (citation omitted). The Court concludes that Plaintiff has failed to do so. *See Redwind v. W. Union, LLC*, 698 F. App'x 346, 347 (9th Cir. 2017) (holding that "[t]he district court properly granted summary judgment on [the self-represented plaintiff's] defamation claim because [the plaintiff] failed to raise a genuine dispute of material fact as to whether the statements in question were not qualifiedly privileged" (citing *Mannex*, 279 P.3d at 285)).

There are several "potential means to abuse the privilege cited in the Restatement, [and] they all enjoy close ties to common sense[.]" *O'Connor*, 165 P.3d at 1224. Specifically, Section 597 provides that the family relationships privilege "can be lost by" (1) "the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter," (2) "the publication of the defamatory matter for some improper purpose," (3) "excessive publication," or (4) "the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privilege." RESTATEMENT (SECOND) TORTS § 597 cmt. a (June 2024 update).

///

Plaintiff fails to raise a genuine issue of material fact as to whether Defendant abused her conditional privilege. Plaintiff responds to Defendant's assertion of privilege by emphasizing that Defendant's statements were unsolicited, "out of context," hurtful, "extremely damaging to [Plaintiff's] reputation," incompatible with "the person [the Wahab family] know[s]," and not based on Defendant "being hurt in her childhood but [instead] with what she has not had in her adulthood: the trust of the people she chooses to be close to." (Pl.'s Resp. at 5.) Plaintiff also argues that Defendant's accusations have differed in certain respects over the years and advances theories as to why Defendant made the statements. (*See id.* at 6-9, recounting Defendant's past accusations, stating that "[m]uch like [Defendant's] sexual misconduct allegations, the motive behind [a matter discussed in Defendant's book] is not presented," suggesting that Defendant's motive "stem[s] from deep-rooted issues regarding her position in the family," and arguing that "the real motive behind [Defendant's] text message was that she just lost it" and Defendant made the statements because "they are impossible to prove or disprove").

Plaintiff's arguments are unpersuasive. In support of his argument that Defendant has presented "[five] different versions of her allegations," Plaintiff notes that Defendant's message alleged that "she had been molested in Kabul in 1979-80 while [Plaintiff] was babysitting her and her siblings," yet "[i]n another instance [i.e., the 1997 family meeting], [Defendant] presented her maltreatment in a different way . . . [by] alleg[ing] that [Plaintiff] abused her by touching her inappropriately while she was living in Kabul in 1979-80." (*Id.* at 6.) Plaintiff claims that Defendant presented additional versions by alleging in her counterclaims that Plaintiff "sexually assaulted her habitually while [neither of her parents were home]," and describing the abuse in greater detail during a conversation with Plaintiff's daughter. (*Id.*) To conclude, Plaintiff argues that "[p]erhaps the most conspicuous portion of [Defendant's]

allegations is not what she alleges [Plaintiff has] done to her, where, and how," but that Defendant "only publicly made these allegations twice" and omitted them from "her published book." (*Id.* at 6-7.)

Contrary to Plaintiff's arguments, Defendant's "versions of her allegations" have been consistent over twenty-five years, and any variations are easily reconciled on the record before the Court. Defendant's decision to limit her publication to two small family gatherings (decades apart) and not include her allegations in a published book only bolsters her defense. That is so because, as explained above, a defendant's conditional "privilege may be abused and its protection lost by . . . excessive publication[,] . . . the publication of defamatory matter for some improper purpose[,] . . . [or] the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged." RESTATEMENT (SECOND) TORTS § 597 cmt. a (June 2024 update). Plaintiff has failed to demonstrate that there exists any evidence from which a reasonable jury could find that Defendant abused her conditional privilege. *See Lewis v. Carson Oil Co.*, 127 P.3d 1207, 1211 (Or. Ct. App. 2006) ("Although plaintiff argues that there was evidence from which a jury could find that defendant abused its qualified privilege, none of that evidence gives rise to a genuine issue of material fact on that point.").

The Court recognizes that Plaintiff disputes Defendant's accusations, but there is no evidence in the record before the Court from which a jury could find that Defendant had no reasonable belief in the truth of her statements. *See Mannex*, 279 P.3d at 285 (affirming the grant of summary judgment on a defamation claim and explaining that although the "plaintiff vigorously dispute[d] the accuracy of [the] defendant's . . . report, there was no evidence from which it could be found that [the] defendant had no reasonable belief in the truth of her

statements"). Plaintiff relies on speculation and conjecture (not evidence) in suggesting that

Defendant may have been motivated by a potential grudge or vendetta against Plaintiff, as

opposed to her stated goal to protect young family members. Mere speculation and conjecture,

however, does not preclude the Court's entry of summary judgment in Defendant's favor. *See id.*

(stating that "there was no evidence on the summary judgment record of [an] alleged grudge and

vendetta other than . . . denied rumors . . . and 'best guesses'"); *see also Loomish v. Cornish*, 836

F.3d 991, 997 (9th Cir. 2016) (stating that "[m]ere allegation and speculation do not create a

factual dispute for purposes of summary judgment") (simplified).

 For all of these reasons, the Court concludes that Defendant is entitled to summary

judgment on Plaintiff's defamation claim because Defendant's statements to her family members

were conditionally privileged, and Plaintiff fails to raise a genuine issue of material fact as to

whether Defendant abused her privilege.

## CONCLUSION

 For these reasons, the Court GRANTS Defendant's motion for summary judgment (ECF

No. 100). The jury trial scheduled to begin on September 9, 2024, will proceed on Defendant's

counterclaims only.

 In light of these developments, the Court AMENDS the Civil Trial Management Order

(ECF No. 54) as follows: (1) Counter Claimant Saima Wahab's and Counter Defendant Ebrahim

Wahab's trial documents (exhibit lists, exhibits, witness lists and witness statements (lay and

expert), substantive deposition testimony designations, trial briefs, motions in limine, proposed

jury instructions, proposed voir dire, and proposed verdict forms) are due by August 12, 2024;

(2) any objections or responses to the opposing party's trial documents are due by August 26,

2024; (3) the parties shall not file replies, a joint status report, a joint neutral statement of the

case, or stipulations (*see* Civil Trial Management Order § V); and (4) the pretrial conference will

proceed as scheduled on September 3, 2024, at 9 a.m.

**IT IS SO ORDERED.**

DATED this 2nd day of August, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge